## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| AKRON BOARD OF EDUCATION )<br>70 North Broadway )<br>Akron, OH 44308 )<br> )<br>   Plaintiff )<br> )<br>-vs- )<br> )<br>JASON D. WALLACE )<br>c\o RODERICK LINTON BELFANCE, )<br>LLP )<br>50 S. Main St., Tenth Floor )<br>Akron, OH  44308 )<br> )<br>DANIEL R. BACHE )<br>c\o RODERICK LINTON BELFANCE, )<br>LLP )<br>50 S. Main St., Tenth Floor )<br>Akron, OH  44308 )<br> )<br>RODERICK LINTON BELFANCE, LLP )<br>c\o Its Statutory Agent: Stephen J. Pruneski )<br>50 S. Main St., Tenth Floor )<br>Akron, OH  44308 )<br> )<br>   Defendants )<br> ) | CASE NO. 5:16-CV- 00188<br><br>JUDGE _____<br><br><br>**COMPLAINT FOR RECOVERY OF<br>FEES PURSUANT TO THE<br>INDIVIDUALS WITH DISABILITIES<br>EDUCATION ACT (IDEA)** |

## COMPLAINT

1. This is an action for fees in an administrative proceeding under the Individuals with Disabilities Education Act, 20 U.S.C.§§ 1400, et seq. ("IDEA"), initiated and continued to be litigated by the Defendants even though frivolous, unreasonable, and/or without foundation.

1

## JURISDICTION

2. This Court has original jurisdiction over this matter pursuant to IDEA's fee shifting provision, 20 U.S.C. § 1415(i)(3)(B)(i)(II), and 28 U.S.C. § 1331.

## PARTIES

3. Plaintiff is the Board of Education for the Akron City School District, which is a local education agency ("LEA") under IDEA for special education purposes.

4. Defendant Jason Wallace is an attorney licensed to practice in the State of Ohio, who represented J.B. ("student"), who is a minor child who resides within the Akron City School District and who has been identified as a student eligible to receive special education and related services, and Delaina and Lester Barney ("parents"), J.B.'s parents, in an administrative special education due process proceeding conducted pursuant to IDEA.

5. Defendant Daniel Bache is an attorney licensed to practice in the State of Ohio, who represented J.B. ("student"), who is a minor child who resides within the Akron City School District and who has been identified as a student eligible to receive special education and related services, and Delaina and Lester Barney ("parents"), J.B.'s parents, in an administrative special education due process proceeding conducted pursuant to IDEA.

6. Defendant Roderick Linton Belfance, LLP, is a law firm located at 50 S. Main Street, Akron, OH 44308, and the employer of Defendants Jason Wallace and Daniel Bache during the aforementioned administrative special education due process proceedings.

## APPLICABLE LAW

7. The IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II), provides that a Court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is a local education agency against

the attorney(s) of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation.

8.  The IDEA, 20 U.S.C. § 1415(i)(3)(B)(i)(II), further provides that a Court, in its discretion, may award reasonable attorneys' fees to a prevailing party who is a local education agency against the attorney(s) of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation.

## FACTUAL ALLEGATIONS

9.  On or about December 15, 2014, an IDEA due process complaint was filed on behalf of the parents of J.B. and signed by Defendant Bache against the Akron Board of Education alleging (1) the Akron City School District ("District") was not providing the student with a free appropriate public education (FAPE); (2) that the student's education was not appropriate; (3) that the student was not being educated in the least restrictive environment; (4) that the student suffers from several disabilities including ADHD as well as a peanut allergy and was not being given the protections and services necessary for the student's education or to prevent severe reactions, illness and risk of death; (5) that although aware of the severity of the student's allergy, the school did not adequately provide him medicine when needed as instructed, and thereby increased his susceptibility to the allergy; (6) that when the mother addressed her concerns as to the student's welfare she was laughed at and made fun of by the school nurse, the individual responsible for his health safety; (7) that the student was being segregated from other students; (8) that the student was deprived of educational opportunities; (9) that the student was deprived of extracurricular activity opportunities; (10) that the District failed to provide the student with an adequate evaluation team report (ETR); (11) that the District failed to provide the student with an adequate

3

individual education plan (IEP); (12) that the District failed to properly implement the student's IEP; (13) that the District failed to adequately protect the student from bullying and was continuing to struggle academically in numerous aspects; (14) that the District's failure to implement the student's IEP resulted in the student's poor academic success as well as an increased allergy severity; (15) that the school segregated the student from other students during lunch although the cafeteria is specifically ventilated for the purpose of preventing allergic reactions; (16) that the student was suspended more than ten (10) days in aggregate without the required manifestation hearing; and (17) that the student's mother had to move the student to a new school to assuage her fears of the student's safety. (Exhibit A) Defendant Wallace was, shortly thereafter, identified as lead counsel.

10. At no time prior to the filing of the due process complaint did the parents or Defendants ever raise any of the concerns with regards to the allegations identified in the due process complaint filed by Defendants.

11. On November 11, 2014 the student's IEP team meeting was held, including the parent, resulting in an Individual Education Program ("IEP") that provided the student with a free appropriate public education ("FAPE") in the least restrictive environment ("LRE").  The student's IEP was signed by the parent in agreement, including a statement by the parent that was written into the IEP that "[J.B.'s] mother is so happy that he has improved so much so fast."

12. The due process complaint that was filed on December 15, 2014 by Defendants was frivolous, unreasonable, and/or without foundation and the claims identified by Defendants in the due process complaint were based on factually erroneous allegations.

4

13. The allegations made in the due process complaint were wholly without merit, were frivolous and without factual or legal foundation, and had absolutely no chance at success.

14. The Defendants lacked any legal authority to support their arguments made during the due process hearing proceedings and on appeal.

15. Defendants failed to conduct a reasonable inquiry into the merits of the claims prior to their filing of the due process complaint.

16. Defendants misidentified the name of the party requesting the due process hearing by incorrectly identifying Maria Vogt as the student's mother and incorrectly identified the student's address as well as the name of the student's school on their due process complaint.

17. Defendants alleged fact(s) in their due process complaint, that even if true, would not amount to a violation of the law.

18. Defendants initiated the due process complaint and continued to litigate their claims even after it was obvious that their claims were meritless, frivolous, unreasonable and without foundation.

19. None of the material facts alleged in the due process complaint were accurate and Defendants were clearly on notice of these deficiencies and their continued pursuit of them unreasonably prolonged litigation.

20. The remedies sought by Defendants in filing the due process complaint included attorney fees for themselves, for the parent to be determined the prevailing party, compensatory education, extended school year services ("ESY"), and education in the least restrictive environment ("LRE").

21. Pursuant to a December 16, 2014 request for the student's educational records, Defendant Wallace was provided the student's educational records, including the student's disciplinary records, on or about December 22, 2014 on a disk.

22. On December 22, 2014 Anne Piero Silagy was appointed as the administrative law judge, i.e., Impartial Hearing Officer ("IHO") to hear the case.

23. Subsequent to the filing of the due process complaint, the Board issued its response and invited Defendants and their client to a resolution meeting in order to meet face to face and discuss possible settlement. Defendants requested that the resolution meeting be conducted via telephone. On December 31, 2014, the Board's Counsel and Karen Liddell-Anderson, Director of Special Education, participated in the resolution meeting via telephone with Defendants to discuss possible settlement of the due process complaint.  The Board's offer to resolve the complaint was rejected by Defendants.

24. Following the resolution phone meeting, the Board made a written offer of judgment on or about January 9, 2015 to Defendants Wallace and Bache in an effort to begin a dialogue with the Defendants with regards to possible settlement of the due process complaint. Defendants failed to accept the offer within ten (10) days.

25. On or about January 14, 2015, Counsel for the Board met with Defendant Bache at the Board's office and again engaged in a discussion about possible settlement of the underlying due process complaint, in an effort to avoid the cost of unnecessary litigation.  Defendants did not engage with the Board's Counsel in any further settlement negotiations.

26. At the disclosure conference held on February 9, 2015, Defendants submitted a list of 70 witnesses, in which they identified the Board's Counsel as one of their witnesses along with the Superintendent and Treasurer.

27. The IHO directed Defendants to pare down their list of 70 witnesses at the February 9, 2015 disclosure conference and instead of paring the list down, Defendants instead supplemented their witness list adding three additional witnesses.

28. On or about February 12, 2015 Board's Counsel filed a Motion to Quash the testimony of non-relevant witnesses identified in Defendants' witness list, including Board's Counsel, Superintendent, and Treasurer, and alleged that Defendants were engaging in bad-faith tactics.

29. When the due process hearing commenced on February 18, 2015, Defendant Wallace (lead counsel) was late to the hearing and Defendants' exhibit book was disorganized, incomplete, out of order in places and not properly paginated, and therefore Defendants were not in compliance with the IHO's order with regard to their exhibits.

30. The due process hearing took place on February 18, 19, 20, 25, 26, and March 25, 2015 before IHO Anne Piero Silagy.

31. During five (5) full days of hearing Defendants failed to produce any evidence in support of any essential elements of a prima facie case on the claims identified in their due process complaint.

32. During the hearing, Defendants offered testimony by the mother that consisted of conclusory statements and Defendants continued to present testimony by the mother after Defendants were clearly on notice of blatant material inconsistencies in her sworn testimony.

33. On February 20, 2015, Dr. Smucker appeared and offered expert testimony in Defendants' case in chief.  On February 24, 2015, Defendants requested an extension of time to schedule three additional experts to testify at the hearing by sending an email to Board's Counsel and the IHO the night before the fourth day of hearing indicating that "after deliberation … [Dr.

Kishore, Mary George, CNP, and Dr. Emily Scott] are vital to [their] case." In response, the Board's Counsel filed a written objection on February 24, 2015 to the Defendants' request for extension, as it would unreasonably prolong the litigation.

34. The Board's February 24, 2015 objection also addressed the Defendants' treatment of their witnesses, who were educational professionals, and who were served with subpoenas by Defendants the evening before they were compelled to appear and give testimony in Defendants' case.

35. At the conclusion of the February 26, 2015 hearing date, Defendants did not rest their case.

36. Defendants' behavior exhibited throughout the hearing demonstrated their exploitation of the process in which they initiated and continued to litigate claims that were clearly meritless and without factual or legal foundation and had no chance of success, resulting in $8,608.00 in court reporter fees and $19,065.26 for hearing officer fees. (Exhibit B)

37. On March 13, 2015, the IHO issued an Order Scheduling Final Day of Hearing. In her Order she explained her granting of Defendants' request for an extension of time to allow them to schedule additional expert witnesses, and stated "[n]ot wanting to prejudice the [parents] for their Counsel's failure," due to the fact that subpoenas had not been served by Defendants in sufficient time for the experts to be available and despite the fact that the matter had been scheduled for hearing since January 14, 2015.

38. The IHO's March 13, 2015 Order Scheduling Final Day of Hearing set forth the dates of March 25, 26, and 27, 2015, the dates that both parties agreed upon for all remaining witnesses who would be expected to testify. The IHO's March 13, 2015 Order further indicated in the event that an earlier date could not be agreed upon, the matter would resume on March 25, 2015 at 9:00 a.m. as previously agreed to by the parties. In response,

Defendants indicated that they were no longer available at 9:00 a.m. on March 25, 2015 or the afternoon on March 27, 2015 and Defendants demanded that the hearing not go forward on the morning of March 25, 2015. The IHO concluded in her March 13, 2015 Order that Defendants had "been extended numerous courtesies throughout this case." The IHO further stated in her Order, "[t]here simply is no excuse that neither of the two counsel who have appeared, prosecuted and both of whom at the hearing indicated that they were available all day on those three dates to now have conflicts, particularly when the extension and dates were prompted at their [the Defendants'] request. At no time did the Hearing Officer release any of the dates reserved." The IHO Ordered that unless she was notified by Defendants that an alternative time was agreed upon by the parties, the final day of hearing would be March 25, 2015 at 9:00 a.m. (Exhibit C)

39. On March 25, 2015, the Defendants did not appear at the hearing at 9:00 a.m. Defendant Bache appeared over 50 minutes late without Defendant Wallace (lead counsel) and without Defendants' client and rested their client's case.

40. On March 25, 2015, Counsel for the Board moved for a directed verdict, which was granted by the IHO on the issues of (1) least restrictive environment ("LRE"); (2) extended school year services ("ESY"); and (3) manifestation determination.

41. As indicated in the IHO's decision, she was concerned by the lack of evidence presented on multiple elements of Defendants' remaining claims. The IHO specifically instructed Defendants to address in their post hearing brief what evidence they had presented to establish each of the elements of each of their remaining claims. Defendants identified no credible evidence in support of their remaining claims in their post hearing brief, as instructed by the IHO.

42. The Defendant's post hearing brief included an additional parade of horribles, further alleging that the student was "almost killed" by school officials and stating "how close to death should a child be before a school will call 911 at a parent's request" and "the school made multiple major mistakes the day of [the student's] exposure to peanuts and it could have cost him his life."

43. In their post hearing brief, Defendants also identified and accused one of the student's former teachers of engaging in inappropriate sexual behavior with the student, with full knowledge that the allegation was false.

44. At no time prior to or after filing the due process complaint did the Defendants ever file any report with Children Services regarding any safety concern regarding student, pursuant to O.R.C. 2151.421, as mandatory reporters of suspected child neglect or abuse.

45. On May 5, 2015, the day after the post hearing briefs were submitted, Defendants filed a Motion for Reconsideration and a third motion for sanctions against the Board requesting that the hearing officer reconsider the directed verdict and to issue sanctions against the Board.

46. The IHO's Decision was issued on June 11, 2015. (Exhibit D).

47. The IHO Decision ruled in favor of the Board on every claim presented by Defendants in the due process hearing and dismissed the Defendants' due process complaint in its entirety, entitling the Board to prevailing party status.

48. The IHO concluded that the mother's testimony was fraught with inconsistencies during the hearing and found her testimony not to be credible.

49. The IHO concluded that it became apparent through the course of the hearing that the due process complaint was "hastily thrown together" by Defendants and that "very little thought, research or preparation was put into this case prior to its presentation".

50. The IHO concluded that she was "profoundly disturbed by the errors in the Defendants' due process complaint, the apparent last minute assembly of an exhibit book, the inability of [Defendants] to be punctual for hearings, the lack of focused questioning by the [Defendants], and the failure of [Defendants] to identify the legal issues".

51. The IHO concluded that the Defendants "failed to produce any credible evidence on the required elements for many of their claims".

52. The IHO concluded that the multiple days of hearing under the IDEA for the District's mistake in one instance of placing peanut butter on a breakfast cart, with absolutely no evidence of how this impacted the student's access to education or his ability to access to education other than missing three and one half days of school was "distressing to this Hearing Officer…" The IHO further concluded that the Defendants' "other issues appeared to be almost a pretext as very little valuable or relevant testimony or evidence was elicited by [Defendants] on those issues during the hearing".

53. The IHO concluded that Defendants failed to produce even a "scintilla of evidence" that the student was regressing or had difficulty recouping over breaks, as required for extended school year services.

54. The IHO concluded that Defendants failed to submit evidence sufficient to assert a claim under the least restrictive environment requirements under IDEA.

55. The IHO concluded that any isolation the student may have felt on a field trip was minimal and due to the parent's decision, not the schools, and that the evidence demonstrated that the

mother failed to respond to numerous inquiries nor was there any evidence that the mother ever communicated her concerns over transportation to the school.

56. The IHO concluded that Defendants provided "absolutely no evidence" that the student had been suspended for more than ten (10) days and that Defendants "made no effort to confirm how many days the student was disciplined prior to filing their due process complaint or even before the hearing".

57. The student had zero (0) days of out of school suspension at the time Defendants filed their due process complaint and the mother indicated no concerns regarding the student's safety at school. The mother further verified in the student's Evaluation Team Report ("ETR") that she had no concerns with regards to bullying.

58. The IHO concluded that Defendants' claims that the IEP did not address the student's needs, without any nexus to a need for special education services was wholly insufficient.

59. The IHO concluded that there is no legal requirement under the IDEA that the student's Action Plan (related to his peanut allergy) be fully incorporated into the IEP, as argued by Defendants.

60. The IHO concluded that she did not find sufficient credible evidence that bullying actually occurred.

61. The IHO concluded that Defendants' claim that the student was not making progress lacked merit and that the student was on track to closing the gap with his normal peers raising his achievement from 0.5 to .07 and further concluded that the student's progress was impeded by his fifth (5th) move in the past 15 months.

62. The IHO concluded that the District provided the student with a free appropriate public education ("FAPE") and the student's IEP and ETR were adequate.

63. The IHO concluded that the mother did not dispute that the student's IEP team met and attempted to discuss and explain the plan to her and that she is able to understand after explanation and that Defendants did not meet their burden on the issue of predetermination or lack of parental input.

64. The IHO concluded that Defendants failed to present sufficient evidence to prosecute their claims that the student's IEP team should have reconvened after the student had a disciplinary event, suffered a concussion, or had behavioral or digestive issues nor did Defendants provide any evidence that the student's progress or education was negatively impacted by these events.

65. The IHO concluded that the Defendants provided "no evidence" as to why they felt that certain subtests were required in his ETR or that new testing was warranted after the student's concussion, or due to his medical condition and/or absences.

66. The Board argued throughout the proceedings that because Defendants' due process complaint was frivolous, unreasonable and without foundation and their bad faith action of continuing litigation of obvious meritless claims were bad faith tactics that warranted sanctions and attorney fees to be rendered against the Defendants. The IHO concluded that although she did not have authority to award attorney's fees to the Board or issue sanctions against the Defendants, "the weakness of Defendants' case as presented was so glaring that the IHO would be remiss not to acknowledge [the Board's] valid concerns".

67. Under 20 U.S.C. § 1415(i)(3)(B)(i)(II), Plaintiff is entitled to an award of attorneys' fees for work performed related to the December 15, 2014 due process complaint and hearing proceedings.

13

68. Defendants continued to litigate all the issues identified in their due process complaint by appealing the IHO's decision on July 27, 2015 to the Ohio Department of Education for State Level Review.

69. Monica R. Bohlen was appointed by the Ohio Department of Education as the State Level Review Officer ("SLRO").

70. On September 11, 2015, Defendants filed Motion for a New Trial with the SLRO alleging that the IHO did not possess the minimum qualifications to be an IHO; that she presented; misstatements of law; misrepresented the facts and that her ruling contained numerous grammar, punctuation and spelling errors. Defendants also accused the IHO of engaging in misconduct and improperly attached documents from another one of their other due process cases, involving another school district. Defendants also claimed that the IHO did not provide Defendants with a fair and unbiased hearing. On September 11, 2015 Defendants also filed a Motion to Supplement the Record and to Compel Respondent to Produce all Educational Records.

71. On September 28, 2015 the SLRO issued an Order overruling Defendants' Motion to Supplement the Record and to Compel Respondent-Appellee to Produce All Educational Records.

72. On September 28, 2015, the SLRO also ordered Defendants' Motion for a New Trial to be stricken from the record.

73. On November 9, 2015, the SLRO issued a Final Decision and Order affirming the IHO's Decision and finding that Defendants failed to carry their burden of proof on every issue brought forth in the due process complaint, entitling the Board to prevailing party status. (Exhibit E)

14

74. The SLRO further concluded that schools are not responsible for parental overreactions as occurred in this case. The SLRO stated in her ruling, "[i]nstead of being relieved to see her son was not suffering an allergic reaction and was happily going about his school day, Mother overacted and, causing Student to become upset and caused him to suffer another disruption to his educational program."

75. The SLRO concluded that the IHO conducted her hearing in an appropriate manner and that the IHO's conduct of the hearing demonstrated her goal of ascertaining the facts and making a fair and timely determination.

76. Rhonda Porter, Counsel for Plaintiff throughout these proceedings, is a licensed member of the Ohio bar since 2003 and has over 11 years of experience in the practice of school law.

77. Ms. Porter spent a total of 202 hours working on this matter, from December 17, 2014 through January 25, 2016;

78. Under 20 U.S.C. § 1415(i)(3)(B)(i)(II), Plaintiff is entitled to attorneys' fees for work performed related to defending Defendants' continued litigation against the Akron Board of Education in this due process appeal to the SLRO.

79. On December 23, 2015 Defendants continued their litigation by filing another appeal to the Common Pleas Court, which was summarily removed to federal court by the Board.  On appeal, Defendants added a third attorney, Mr. Brian Bremer, who signed the notice of appeal on behalf of the Defendants.  Defendants' continued litigation of claims that are clearly frivolous, unreasonable, or without foundation entitles the Board, as the prevailing party, for fees related to work performed in relation to Defendants' continued litigation of their meritless claims.

## COUNT II

80. Plaintiff herein incorporates by reference the allegations in the above paragraphs 1-79.

81. Because Defendants continued to litigate even though it was obvious that the allegations in the due process complaint lacked merit, Defendants' continued pursuit of litigation in the administrative proceeding was frivolous, unreasonable, and/or without foundation.

82. Under 20 U.S.C. § 1415(i)(3)(B)(i)(II), Plaintiff is entitled to an award of attorneys' fees for work performed related to Defendants' continued litigation against the Akron Board of Education after the litigation clearly became frivolous, unreasonable, and/or without foundation.

## RELIEF

WHEREFORE, Plaintiff respectfully asks that the Court grant the following relief:

A. Find that Defendants brought a due process complaint that was frivolous, unreasonable and without foundation;

B. Find that Defendants continued to litigate the claims in their due process complaint that were frivolous, unreasonable and without foundation;

C. Award to Plaintiff of $26,673.26 in costs related to court reporter and hearing officer fees incurred by Plaintiff in the administrative proceedings;

D. Award to Plaintiff reasonable attorney fees for 202 hours, at the usual and customary rate of $290.00/per hour for the Akron Board of Education's representation in the administrative proceedings initiated and continued by Defendants on appeal. Plaintiff requests that additional hours incurred in proceedings before the court, not yet determined, be included in the final award of attorney fees to Plaintiff. A detailed and itemized statement will be provided; and

16

E.  Order any such other relief as the Court deems just and proper.


          Respectfully submitted,


          s\*Rhonda Porter*
          Rhonda Porter (0076885)
          General Counsel
          Akron Board of Education
          70 North Broadway
          Akron, Ohio  44308-1999
          Telephone:  330-761-2912
          Facsimile:  330-761-3295
          Email:  rporter@akron.k12.oh.us

          Counsel for Plaintiff, Akron Board of Education